able proportion of salvage; that the whole sum allowed and decreed to the owner and freighters, ought to have been decreed to him; and that the sums decreed to the two apprentices ought not to have been ordered to be paid to themselves or their proctor only.

William Stevenson, the mate, assigned for error, that the share assigned him was inadequate to his services, merits and situation.

Christie and Young, the freighters of the Firm, alleged that the proportion allowed to the owner and freighters of the Firm was too small, in proportion to their risk; and that the proportion awarded the freighters was too small compared with that awarded to the owner.

[The judgment of the circuit court was affirmed in part by the supreme court, where it was carried by writ of error. 2 Cranch (6 U. S.) 240.]

## Case No. 9,231.

MASON et al v. The BLAIREAU.

[See Case No. 9.230.]

## Case No. 9,232.

MASON et al. v. BOOM CO.

[3 Wall Jr. 252;[1] 20 Leg. Int. 12.]

Circuit Court, W. D. Pennsylvania. Sept. Term, 1858.

CONSTRUCTION OF STATUTES—FEDERAL AND STATE RIGHTS—GRANTS—PROVISIONS.

1. Although it is a settled rule of law, that when a proviso to a grant of any kind is repugnant to the grant itself, the grant is good and the proviso only void, yet this is a rule which is to be taken with modifications. And in the construction, especially of American statutory grants in derogation of common right, passed as private acts, oftentimes are in our legislatures inconsiderate, and after having been ingeniously drawn beforehand, by persons who had a special and not allowable interest of their own in view, and who have contrived language to carry their object, in such a way that the legislature less acquainted than they with exact facts, could not discover the precise import of the words used, the rule is always to be taken in subordination to the greater rule of law, that the true intention, as apparent from the whole grant, is to be effectuated.

2. Hence, if on a whole case, reference being largely had to the public interests, in determining this point, it appears that a grant meant to give rights in case those rights could be enjoyed in a certain way, in which way it is plain, after experiment, that they cannot be enjoyed, then the whole grant is void. And in such case it makes no difference whether the qualification to the grant be put in adjectitiously and after an absolute previous grant, or whether it be put in previously and as a condition precedent.

3. No state of the federal Union, by declaring, in a grant which it makes of certain rights, that any question which arises under that grant, shall be determined in such or such a way, can prevent any class of citizens from suing in the federal courts, if, by the constitution and statutes of the United States, they have a right to sue in such courts.

4. Semble, that the Pennsylvania statute of 1806, which enacts that in "all cases where a remedy is provided or duty enforced, or anything directed to be done by an act or acts of assembly of this commonwealth, the directions of the said act shall be strictly pursued, and no penalty

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

shall be inflicted. or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such acts into effect" has reference to legal remedies only, and having been passed, when the equitable remedy of injunction was unknown in Pennsylvania, does not enjoin injunction.

This was a bill for injunction against stopping the complainants' lumber while it was floating down the Susquehanna; the case being thus:

A statute of Pennsylvania—Act March 29, 1849 [Laws 1849, p. 245]—made certain persons a corporation, under the name of the West Branch Boom Company, and authorized them to erect at a certain point on the Susquehanna, (a public highway of Pennsylvania,) such boom as might "be necessary for stopping and securing" lumber floating upon that river; giving them tollage; with a proviso that the boom should not extend more than half way across the river, and be so constructed as to admit the safe passage of rafts, boats and lumber, and not impede the navigation of the river. A second proviso not very consistent with the general scope of the law, enacted, that no lumber should be stopped without a written request from the owner, and that "a free and unobstructed passage shall at all times be kept open, so that the navigation shall be as free as it is now;" i. e., before the boom was constructed. It then provided that if any persons should "suffer damage by the exercise of the powers herein granted," and the parties injured and the boom company could not agree on the damages, "the court of common pleas having jurisdiction in the county where the boom is," should cause them to be ascertained by three freeholders, whom the court should appoint; and their report being confirmed, should have the effect of a judgment: with a right of appeal to a jury.

A previous well known general statute of Pennsylvania, passed in 1806,—Act March 21, § 2 [Thompson's Laws Pa. 1805-06, p. 569],—it is here necessary to say, enacts that in "all cases where a remedy is provided or duty enforced, or anything directed to be done by an act or acts of assembly of this commonwealth, the directions of the said act shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such acts into effect."

In this state of the law, the complainants, who were citizens of Rhode Island and Connecticut, were floating rafts down the Susquehanna, which got into the boom of the defendants, and were detained there several weeks; and having filed their bill as above stated against the defendants, praying that they might be enjoined from stopping it, the case came on to be heard on this bill and the answer to it.

The answer did not deny that the logs were detained, nor that the complainants might be damnified by such detention, but it alleged